### DANNELLY *v.* CUTHBERT OIL COMPANY.

1. If a person who was illiterate and could read and understand writing only with difficulty when in his normal condition, and who, by reason of his physical and mental condition resulting from a personal injury and being under the influence of opiates administered to relieve his pain, was unable to read, was, while in such condition, induced by the fraud of the other party to a contract between them to sign a writing as evidencing such contract, but which in fact omitted some of the material terms thereof, he may maintain an equitable petition to have the writing reformed so as to speak the truth of the agreement made.

2. If there is a defect in a petition on account of misjoinder of causes of action, such defect is not reached by a demurrer which does not point out the same.

Argued July 23,—Decided December 17, 1908.

Action for damages. Before Judge Roan. Randolph superior court. November 6, 1907.

The plaintiff brought suit for damages against the defendant, on account of personal injuries received on November 9, 1905, while in its employment. The defendant filed an answer and

pleaded an accord and satisfaction, besides filing a demurrer to the original petition and demurrers to some of the allegations in the amendments thereto. In the amendments filed by the plaintiff he sought to reform the writing given by him to the defendant and pleaded by it as an accord and satisfaction of the plaintiff's claim for damages. The writing was dated November 22, 1905, was signed by the plaintiff, and recited that he had received from the defendant $100 in full settlement, accord and satisfaction of any and all claims or demand which he had by reason of the injuries referred to. In the various amendments filed by the plaintiff, among other things, he alleged: At the time he signed the writing, it was agreed between him and the defendant, through its president, or general manager, Walker, that the defendant should then provide petitioner with $100 to cover the expenses he had incurred since his injuries, and that as soon as the petitioner was able to attend to business, the "defendant would set him up in the beef business and would provide all equipment and capital for him to engage in this business in Cuthbert, Ga., and that the capital was to be sufficient to enable petitioner to earn in this business as much as he was earning before the injury," and that "there was to be no final settlement of petitioner's claim for damages until this should be done." "Petitioner was then requested by said Walker to sign a receipt for the $100 which was to be paid then. Petitioner did not read the receipt, was not able to read it, and so stated to said Walker, and was informed by said Walker that it was a receipt for the $100, which was in part settlement of petitioner's damages, the rest of it to be attended to as soon as petitioner was able to attend to the beef business. Petitioner alleges that he signed the said receipt relying entirely on the representations of said Walker as to its contents, and would not have signed it had he known that it read as the copy attached to defendant's plea. . . Petitioner further shows that after he became able to attend to the beef business, he called upon the defendant to comply with the agreement, and stood ready to carry it out on his part, but defendant failed and refused to abide by the settlement agreed upon, and has never 'set petitioner up in the beef business,' as it was to do under the agreement, and petitioner further alleges that there was to be no settlement, nor satisfaction, until this part of the agreement was carried out, and that the part paid

was offered and accepted for the purpose of paying petitioner's expenses while he was laid up as a result of the injury, and that petitioner did not and was not even requested to accept that amount in full settlement. . . Plaintiff was unable to read when the alleged accord and satisfaction was made, because of his physical and mental condition resulting from his suffering produced by his said injuries, and because he was under the influence of opiates which·he had taken to reduce his pain and suffering, which condition of petitioner was well known to the said Walker at the time he induced plaintiff to sign said alleged accord and satisfaction. Petitioner was and 'is an illiterate man, and even when entirely at himself can read and understand writing only with difficulty. . . Relying upon the integrity of the said Walker, in whom he reposed trust and confidence, and believing his representations as to what the writing contained to be the truth, and believing that it expressed the contract as actually made, petitioner signed said receipt, without knowing that it was otherwise worded, and was deceived and overreached by the said false and fraudulent representations of the said Walker, as aforesaid." The plaintiff prayed that such writing be reformed so as to speak the truth of the agreement. General as well as special demurrers to the petition as finally amended were filed. The court announced that the demurrer would be sustained unless the plaintiff offered to restore the $100 paid him by the defendant. Plaintiff declined to do this, and the court granted an order that the demurrer wherein the petition was attacked for the failure of the plaintiff to restore such sum be sustained, and that the petition, because of such failure on the part of the defendant, be dismissed. To this order the plaintiff excepted.

*Glessner & Pottle, Raines & Gurr,* and *T. R. Perry,* for plaintiff.
*James W. Harris* and *M. C. Edwards,* for defendant.

HOLDEN, J. (After stating the facts.) The court ·did not dismiss the petition because no cause of action was set forth, but because the plaintiff did not restore or offer to restore the $100. The defendant demurred to the plaintiff's prayer for reformation, on the ground that the allegations made did not warrant the prayer, and that the prayer was virtually asking that the release pleaded by the defendant be rescinded; and contends that the court did right in requiring the restoration of the $100 by the plaintiff. The plaintiff filed other special demurrers to the allegations on

which reformation was sought, among which there was a demurrer that no fraud on the part of the defendant was shown, and, if fraud was shown, the plaintiff by due care and diligence could have discovered it before signing the writing.

1. The writing signed by the plaintiff recited that the defendant had paid him $100, and that it was received in full settlement, accord and satisfaction of his claim for damages on account of the injuries he sustained. If the recitals contained in this writing are true and the contract purporting to have been made therein is binding on the plaintiff, there was an accord and satisfaction of his claim for damages on account of the injuries he sustained, and a complete release of the defendant on account of such claim. But if the allegations in the plaintiff's petition as amended are true, there was no such accord, satisfaction, and release. The plaintiff alleges that the real agreement between him and the defendant was that the $100 was not paid by it, nor received by him, in full settlement of his claim, but was received by him only in part settlement thereof, and that the defendant was to "set the plaintiff up in the beef business as soon as he was able to attend to business," and was to furnish such equipment and capital therefor as would enable the plaintiff to earn as much in such business as he was earning as a laborer for the defendant prior to his injury. The plaintiff also alleges that the defendant refused to comply with this part of the agreement. Moreover, the plaintiff states in his amendments that it was a part of the agreement between him and the defendant that "there was to be no final settlement of petitioner's claim for damages until this should be done; . . there was to be no settlement or satisfaction until this part of the agreement was carried out." The latter part of the allegation just quoted refers to that part of the agreement wherein the defendant was to furnish the plaintiff capital and equipment with which to begin the "beef business" as agreed upon. The plaintiff also alleged that the balance of the settlement was "to be attended to as soon as I am able to attend to the beef business." Under the allegations above referred to, there was no accord and satisfaction of the plaintiff's claim for damages. The $100 was received only as a part settlement of such claim, and a full settlement thereof was to be made after the plaintiff sufficiently recovered from his injuries to attend to business. According to the allegations of the

amendments, the defendant not only refused to carry out that part of the agreement relating to a full settlement, but it was a part of the understanding between the parties that the plaintiff's claim for damages was not settled at all until this was done. There is no allegation that the plaintiff agreed to accept the defendant's promise to complete the settlement as a settlement of his claim for damages. On the other hand, there is a distinct allegation that it was understood between the parties that the plaintiff's claim against the defendant was not settled until the agreement was fully executed. The defendant refused to execute the agreement, and there has been no accord and satisfaction of the plaintiff's claim. In this connection, see *Long* v. *Scanlan,* 105 *Ga.* 424 (31 S. E. 436). If the $100 was received only as a part settlement of the plaintiff's claim, and it was understood between the parties that the balance of the claim was not settled until the defendant did certain other things for the benefit of the plaintiff, which the defendant refused to do, there would be no satisfaction, and the plaintiff's right to sue on the original cause of action would not be barred. The $100 received, under the facts alleged, would be credited on the plaintiff's claim, and would be a satisfaction only pro tanto. If the plaintiff was unable to read, because of suffering from pain and being under the influence of opiates, and if Walker knew of this fact and falsely represented to the plaintiff what were the contents of the writing, and plaintiff signed the writing believing its contents were as thus represented, there would be fraud on the part of Walker in procuring the signature of the plaintiff, and the writing would not be binding on the latter. In this connection, see *Gore* v. *Malsby,* 110 *Ga.* 893 (36 S. E. 315) ; *Georgia Medicine Co.* v. *Hyman,* 117 *Ga.* 851 (45 S. E. 238). We can not say, as a matter of law, that the plaintiff could have discovered such fraud by the exercise of ordinary care and diligence.

The plaintiff in his petition as amended prayed for a reformation of the writing purporting to be an accord and satisfaction, alleging that such writing did not contain the true agreement between the parties, but that the true agreement was that the $100 was paid by the defendant and received by the plaintiff as part settlement of his claim for damages, and that the balance of the settlement was to be made as hereinbefore set forth. Under the plaintiff's allegations, he was laboring under a mistake as to what

the writing contained. The writing stated that the $100 was received in full settlement, accord and satisfaction of plaintiff's claim; whereas, under the plaintiff's allegations, he was under the impression that it contained a totally different statement, by reason of the false representations as to its contents made by Walker, who knew the plaintiff could not read. There was a mistake on the part of the plaintiff and fraud on the part of Walker. Under these circumstances, can the writing be reformed so as to speak the truth of the agreement, which the plaintiff thought was in the writing, and which the defendant's agent informed him was in the writing at the time he signed it? In the case of *Wyche* v. *Greene,* 26 *Ga.* 415, it is said that what is a mistake on one side and a fraud on the other is as much the subject of correction as if it were a mistake on the part of both parties. A mistake on the part of one of the parties to an agreement as to what it contains will not alone be sufficient to give the right to have it reformed. Where there is a written instrument between two parties, a mistake on the part of one party, and fraud on the part of the other, equity will grant appropriate relief. What kind of relief it will grant depends upon the facts and circumstances of each particular case. Where the writing signed does not contain the agreement as made between the parties, but is materially different therefrom, and one of the parties labors under a mistake in believing that it does contain such agreement as is actually made, by reason of a statement by the other that it does contain such agreement, and the party acting under such belief can not read, which fact is known to the other party, such writing can be reformed in such manner as to make it speak the truth as to what was agreed upon and believed by the party deceived to be in the writing. There are decisions holding that in order for an instrument to be reformed because of mistake as to its contents, the mistake must be mutual; and the Civil Code, §2982, provides: "Equity will not reform a written contract, unless the mistake is shown to be the mistake of both parties; but it may rescind and cancel upon the ground of mistake material to the contract of one party only." It is true that when an effort is made to reform a contract *solely* on the ground of mistake, such mistake must be a mistake on the part of both parties to the writing. We know of no decision of this court holding that a writing can not be reformed where there was a mistake on the part of one

of the parties and fraud on the part of the other. Upon the right of one party to have a writing reformed where there is a mistake on his part and fraud on the part of the other party, see the following authorities. *Greer* v. *Caldwell,* 14 *Ga.* 207 (58 Am. D. 553); *Hansford* v. *Freeman,* 99 *Ga.* 376 (27 S. E. 706); *Gilbert* v. *Cherry,* 57 *Ga.* 128; *Prater* v. *Bennett,* 98 *Ga.* 413 (25 S. E. 510); *Reese* v. *Wyman,* 9 *Ga.* 430; *Neil* v. *Bunn,* 58 *Ga.* 583; *Bell* v. *Railroad,* 76 *Ga.* 754; *New England Mtg. Co.* v. *Robson,* 79 *Ga.* 757 (4 S. E. 251); *Carbine* v. *McCoy,* 85 *Ga.* 185 (11 S. E. 651); *Burge* v. *Burge,* 45 *Ga.* 301; *Adair* v. *Adair,* 38 *Ga.* 46; *Venable* v. *Burton,* 129 *Ga.* 537 (59 S. E. 253). Also see 24 Am. & Eng. Enc. L. 652.

The contract between parties is what they agree upon, and the writing is merely the evidence of such contract. It should be borne in mind that this is not an attempt to rescind or set aside a contract, but to reform a writing so as to make it speak the real agreement entered into. Where a party seeks to rescind or set aside a contract, he will not be permitted to repudiate it and at the same time retain the benefits received thereunder, but must put the other party in statu quo before he can maintain any action in which it would be involved. Asking the reformation of an instrument is in no sense the repudiation of a contract; but is, on the contrary, an effort to affirm the real contract which the writing, when reformed, will evidence, and the party seeking such reformation would be entitled to retain any amount which he had rightfully received thereunder, both parties still resting under any unfilled obligations which the contract may impose. Plaintiff does not seek to have the court either to rescind or ignore the writing, but to reform it, and in its reformed and proper condition to preserve, recognize, and enforce it. He asks that when the writing is put by the court in the condition of telling the truth about·the agreement, it be given effect by crediting the $100 on the plaintiff's claim for damages. If this writing was as plaintiff seeks to have it declared in his petition to reform it, it would show on its face that the $100 was simply to be credited on his claim for damages, and would not stand in the way of his action for any balance that might be due him on that account. The court committed error in dismissing the petition because the plaintiff did not refund to the defendant the $100 received.

2. The petition as amended was a suit to recover damages on

account of personal injuries sustained by the plaintiff, and to reform the writing given by the plaintiff to the defendant, purporting to be an accord and satisfaction of such claim. There was no demurrer filed to the petition as amended, complaining that these two complaints could not be joined in one suit, nor were there any objections to the amendments being allowed on this or any other ground. Counsel for the defendant in error contend in their briefs that the suit to recover damages, and to reform the writing, could not be joined in one action. If their position in this respect is correct, a demurrer pointing out such defect should have been filed to the petition as amended, or objection on this ground should have been made to the amendments when offered. The court below did not pass upon the question of misjoinder, as his order states that he sustained the demurrer because the plaintiff did not pay or tender to the defendant the $100 before the commencement of the suit. Whether a party can, in the same action, sue to recover damages on a claim for a personal injury inflicted on him by the defendant, and to reform a writing purporting to be an accord and satisfaction of such claim, signed by such plaintiff, is not made by the record and is not before the court for decision, and as to this question we make no ruling.

*Judgment reversed. All the Justices concur.*